IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JOSEPH CAPARELLI, )
)
Plaintiff, )
)
vs. ) No. 05 C 7170
)
EXELON CORPORATION and )
EXELON CORPORATION )
RETIREMENT PLAN, )
)
Defendants. )

## MEMORANDUM OPINION AND ORDER

Plaintiff Joseph Caparelli brought this action against Exelon Corporation and Exelon Corporation Retirement Program, alleging promissory estoppel, breach of contract, violation of the Employee Retirement Income Security Act, 29 U.S.C. § 1001 *et seq.* ("ERISA"), and fraud, requesting declaratory judgment, rescission of the contract, and other injunctive relief. Plaintiff originally filed this action in Illinois state court on November 14, 2005. Defendants removed the case to federal court on December 22, 2005, asserting federal question jurisdiction based on the ERISA claim, and arguing that the state law claims were preempted by ERISA. Defendants now move this court to dismiss plaintiff's complaint pursuant to FED. R. CIV. P. 12(b)(6), asserting that the state law claims are preempted by ERISA, and any ERISA claims must be dismissed for failure to exhaust administrative remedies and/or failure to seek a proper remedy under ERISA. For the reasons stated below, we grant defendants' motion to dismiss.

## BACKGROUND

In reviewing a motion to dismiss under Rule 12(b)(6) we must accept the complaint's well-pleaded factual allegations as true, including the inferences reasonably drawn from them.

McDonald v. Household Intern., 425 F.3d 424, 425 (7th Cir.2005). The complaint should be dismissed only if the plaintiff "failed to allege any set of facts upon which relief may be granted." Pickrel v. City of Springfield, Ill., 45 F.3d 1115, 1118 (7th Cir.1995). *See also* Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Therefore, we take the following facts from the plaintiff's complaint.

Plaintiff was employed by the Exelon Corporation from June 5, 1973, through October 2003. During that time he participated in the Exelon Corporation Retirement Program. Upon plaintiff divorcing his wife, Assunta Caparelli, a/k/a Susan Caparelli, in April 1995, an Illinois state court entered a qualified domestic relations order (QDRO) decreeing that his ex-wife should receive half of his interest in his pension and retirement plan, including payments upon his retirement. Thereafter, upon plaintiff's 50th birthday in 1998, the Exelon Corporation Retirement Plan began paying Assunta Caparelli under the terms of the court's decree.

Thereafter, on October 23, 2003, Exelon's agents Jerome Cole and Patrick Cronin approached plaintiff with an offer for early retirement. Through Cole, Cronin, and Gregario Bazan, Exelon represented to plaintiff that upon taking an early retirement he would receive a gross monthly sum of $3,250.16 and an additional $1,403.20 in supplemental benefits until he was eligible for federal social security benefits. Such amounts were reflected in the plaintiff's signed Benefit Election Form, attached to plaintiff's complaint. Because plaintiff knew that his ex-wife would receive a portion of his pension payment, he questioned Cole and Bazan as to whether the $3,250.16 represented payment to him exclusive of any payment made to his ex-wife. Cole and Bazan assured plaintiff that the $3,250.16 payment would not be reduced by the amount paid to his ex-wife. Relying upon such assurances, plaintiff accepted early retirement.

After terminating his employment with Exelon, plaintiff was informed that the $3,250.16 benefit determination on his Benefit Election Form was inclusive of the payments to his ex-wife, and his adjusted payment would be $2,233.51. Upon learning of the adjustment, plaintiff requested that his job be reinstated, but his request was denied. Thereafter, plaintiff did not start receiving the $2,233.51 payment until April 2005, and waited 18 months before receiving the $1,403.20 monthly supplement.

Because he relied on defendants' representatives' assurances that the monthly payment designated on his initial Benefit Election Form was exclusive of payments to his ex-wife, plaintiff brought this action in state court, alleging various state law claims and violation of ERISA. Defendants removed to this court and moved to dismiss, arguing that the state law claims are preempted by ERISA and the ERISA claims are barred by failure to exhaust administrative remedies and/or improper remedies. Upon reading defendants' arguments, plaintiff voluntarily withdrew his ERISA claim and stipulated that the $3,250.16 figure was "a correct monthly gross benefit exclusive of monies paid to his former spouse" and that the $2,233.51 was a "correct monthly gross benefit after deduction of monies paid to his former spouse." (plf's response at 3). Plaintiff contends that the stipulations and withdrawal of the ERISA count remove the action from the scope of ERISA preemption.

## DISCUSSION

Defendants argue that plaintiff's state law claims must be dismissed because they are preempted by ERISA. Plaintiff contends that upon voluntary withdrawal of his ERISA claim he has removed his claims from the purview of ERISA preemption. Specifically, plaintiff asserts that by virtue of the withdrawal and stipulations "it is unnecessary to dissected [sic] or interpret the [ERISA] Plan." (plf's response at 4).

The ERISA statute includes two relevant preemption provisions. Section 502(a), 29 U.S.C. § 1132(a), provides an exclusive civil remedy for a participant or beneficiary to "recover benefits due to him under the terms of the plan, to enforce his rights under the terms of the plan, or to clarify his right to future benefits under the terms of the plan." Under § 502(a), federal law displaces state law and translates ERISA-preempted state claims into federal claims. Rice v. Panchal, 65 F.3d 637, 640-41 (7th Cir.1995) (also noting that there are some state laws that § 502(a) displaces without necessarily replacing them with federal claims). Section 514(a) states that federal ERISA law will supercede any state law "insofar as they may now or hereafter relate to any employee benefit plan." In Rice, the Seventh Circuit clarified the difference between "complete preemption" under § 502(a) and "conflict preemption" under § 514(a). The Rice court explained that there are important jurisdictional differences between complete and conflict preemption, holding that "complete preemption under § 502(a) creates federal question jurisdiction whereas conflict preemption under § 514(a) does not." *Id.*, at 640. In this case, that distinction could have jurisdictional consequences. If we find that plaintiff's state law claims are completely preempted by § 502(a), removal was proper and we may rightly maintain jurisdiction over this action. If, however, we find that plaintiff's state law claims are not preempted or are preempted by § 514(a), removal was improper and we must remand this action to the state court. Because plaintiff has withdrawn his federal ERISA claim, even if his state law claims are preempted under § 514(a), plaintiff's action properly belongs in the state court.

The Seventh Circuit has set forth three factors for determining whether a claim is completely preempted by § 502(a) of ERISA. First, plaintiff must be able to bring a claim under § 502(a). Second, plaintiff's claim must be enforceable under § 502(a). Finally,

plaintiff's claim must require interpretation of an ERISA plan or contract. Klassy v. Physicians Plus Ins. Co., 371 F.3d 952, 955 (7th Cir.2004); Rice, 65 F.3d at 641-644; Jass v. Prudential Health Care Plan, Inc., 88 F.3d 1482, 1487 (7th Cir.1996). The first prong is satisfied because, as a participant and beneficiary of an ERISA plan, plaintiff is entitled to bring suit under § 502(a). *See* Jass, 88 F.3d at 1489; Stein v. Unum Provident Ins. Co. of America, 2005 WL 2338819, *2-3 (N.D.Ill.2005). The second prong is also satisfied because plaintiff's claims fall within the scope of protection of § 502(a)(1)(B), which is plaintiff's exclusive means of recovering benefits under an ERISA plan. *See* Rice, 65 F.3d at 641 (*citing* Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 66 (1987)). Although plaintiff attempts to posit his claims as separate and distinct from the ERISA plan, in essence he is requesting an adjustment of his pension benefits under his ERISA retirement plan. Plaintiff cannot utilize artful pleading to circumvent a federal question. Franchise Tax Bd. of State of California v. Construction Laborers Vacation Trust for Southern California, 463 U.S. 1, 22 (1983), *superceded by statute on other grounds*, 28 U.S.C. § 1441(e); Jass, 88 F.3d at 1488-89; Muenchow v. Parker Pen Co., 615 F.Supp. 1405, 1410-11 (W.D.Wis.1985). By inserting and then removing the ERISA claim, it is clear that plaintiff is attempting to do just that.

Finally, we come to the crux of the dispute, whether resolution of plaintiff's state law claims requires interpretation of the Exelon ERISA plan. Plaintiff contends that it does not, and therefore his state law claims are not preempted. Defendants disagree.

Plaintiff raises the following state law claims: promissory estoppel (Count II), breach of contract (Count III), and fraud (Count V). Because plaintiff's promissory estoppel and breach of contract claims require interpretation of the ERISA plan at issue, we find that they are completely preempted by § 502.

Although plaintiff contends that his promissory estoppel and breach of contract claims turn on a contract and promise separate and distinct from his ERISA retirement plan, we do not find his argument persuasive. Even assuming that the original Benefits Election Form designating plaintiff's benefits at $3,250.16 per month imposed legal duties on defendants, those duties did not arise independently of ERISA or the ERISA plan terms. *See* Aetna Health v. Davila, 542 U.S. 200 (2004) (finding that the duties imposed by the Texas Health Care Liability Act in the context of providing medical care under an ERISA plan did not arise independently of the ERISA plan). The relationship between plaintiff and defendants arose from the ERISA plan. It was the terms of the ERISA plan that led to the change in plaintiff's benefits determination. Plaintiff does not dispute that the ERISA plan is legally required to follow the terms of any QDRO (*See* Summary Plan Description, at 24), and plaintiff concedes that the $2,233.51 benefits amount is the correct amount when accounting for his QDRO. Defendants' representatives' carelessness in failing to compute plaintiff's benefits to reflect his QDRO was a mistake made in the context of computing his ERISA benefits.

Most compellingly, supplemental or ancillary contracts or promises such as the Benefits Election Form cannot be separated from the ERISA plan itself. The forms are integrated into the ERISA scheme, clearly referred to as a necessary piece of claiming one's pension benefits. (*See* Summary Plan Description, at 22). The benefits set forth on the forms are computed and construed based on the terms of the ERISA plan. The Seventh Circuit has held that "[n]ot only pension and welfare plans, but also contracts specifying levels of pension and welfare benefits, fall into the domain of federal law..." Dranchak v. Akzo Nobel Inc., 88 F.3d 457, 459 (7th Cir.1996). *See also* Sembos v. Philips Components, 2003 WL 1342985, *9 (N.D.Ill.2003). Although Dranchak and Sembos dealt with the broader § 514 conflict preemption, we find that

the Seventh Circuit's reasoning applies with equal validity to the third prong of the complete preemption analysis. The <u>Dranchak</u> court stated: "Portions of the letter agreements that promise the continuation of wages, favorable recommendations, and so on, cannot sensibly be divorced from the portions that deal with pension and welfare benefits." <u>Dranchak</u>, 88 F.3d at 259. If contracts such as a Benefits Election Form, specifying levels of pension benefits, cannot be divorced from the ERISA scheme from which they stem, we must find that determination of plaintiff's promissory estoppel and breach of contract claims require interpretation of the ERISA plan.[1] Therefore, we find that plaintiff's promissory estoppel and breach of contract claims are completely preempted by § 502.[2]

We believe this outcome is consistent with congressional intent to develop ERISA as a "'comprehensive legislative scheme' [that] includes 'an integrated system of procedures for enforcement.'" <u>Aetna Health Inc.</u>, 542 U.S. at 208. As a beneficiary to an ERISA plan, plaintiff's remedies are set forth and limited to those outlined in the ERISA plan. *See* <u>Metropolitan Life Ins. Co.</u>, 481 U.S. at 62-63; <u>Melmedica-Children's Healthcare, Inc. v. Central States Joint Bd. Trust Fund</u>, 2006 WL 794772, *2 (N.D.Ill.2006). Because § 502 sets out a comprehensive enforcement plan and Congress designed the statute to "establish pension plan regulation as exclusively a federal concern" (<u>Alessi v. Raybestos-Manhattan, Inc.</u>, 451 U.S. 504, 523 (1981)), plaintiff cannot succeed on a claim for ERISA benefits by pleading state, rather than federal, claims.

---

[1] This is not to say that <u>Dranchak</u>'s analysis conflates complete and conflict preemption. *See* <u>Husko v. Geary Elec., Inc.</u>, 314 F.Supp.2d 787, 791 (N.D.Ill.2003) (finding that plaintiff's state law breach of contract claim was not completely preempted because plaintiff failed on all three prongs of the complete preemption test). In this case, however, we find <u>Dranchak</u>'s analysis regarding ancillary contracts to be helpful in assessing the third prong of the complete preemption test.

[2] We note that while plaintiff's breach of contract claim cannot be restated under ERISA, the Seventh Circuit has found a federal claim for promissory estoppel under ERISA. *See* <u>Coker v. Trans World Airlines, Inc.</u>, 165 F.3d 579 (7th Cir.1999).

Next, we find that plaintiff's fraud claim is preempted by § 514. Section 514 is broadly construed to preempt any state law "relat[ing] to" an ERISA plan. Ingersoll-Rand Co. v. McClenson, 498 U.S. 133, 138 (1990) (stating that § 514 preemption clause is "conspicuous for its breadth"). Because plaintiff's fraud claim is brought to recover benefits under his pension plan, it is related to the ERISA plan, and thus, is preempted by ERISA. DeBartolo v. Wal-Mart Stores, Inc., 2002 WL 338878, *2 (N.D.Ill.2002). Having already determined that complete preemption of plaintiff's promissory estoppel and breach of contract claims gives us subject matter jurisdiction over this matter, we can maintain jurisdiction over the fraud claim as well.

Further, we find that plaintiff's fraud claim can be restated as an ERISA claim for breach of fiduciary duty. See Muenchow, 615 F.Supp. at 1417-1419 (finding plaintiffs' misrepresentation claim preempted by § 514). Like the court in Muenchow, we find that if defendants made false statements of fact to induce plaintiff to accept the early retirement agreement, defendants may have violated their fiduciary duties under § 404, and plaintiff may have a remedy for such violation under § 502. *See Id.*, at 1417. *Cf.* Miller v. Lay Trucking Co., 606 F.Supp. 1326, 1333 (N.D.Ind.1985) (state law fraud claim was not preempted by ERISA because the alleged fraudulent activities took place prior to entrance into the ERISA contract and therefore did not directly affect the regulation of the ERISA plan).

Because ERISA does not provide a statutory remedy for breach of contract, we dismiss Count III. And because plaintiff has stipulated that the $2,233.51 amount he ultimately received was the proper amount under the terms of his ERISA plan when accounting for his QDRO, he cannot re-plead Count III as a federal claim for benefits under the ERISA plan. Counts II (promissory estoppel) and V (fraud) are also dismissed, but may be re-pled as claims

under federal law.

Defendants also suggest that plaintiff's complaint must be dismissed for failing to exhaust his administrative remedies under ERISA or because plaintiff requested an improper remedy. Because we dismiss plaintiff's complaint in its entirety, we do not need to address those arguments.

## CONCLUSION

For the reasons stated above, we grant defendants' motion to dismiss. Plaintiff's complaint is dismissed without prejudice, with leave to file an amended complaint within 21 days.

JAMES B. MORAN
Senior Judge, U. S. District Court

April 21, 2006.